IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DARVIN ALLEN, #233800, | ) Civil Action No. 3:10-939-HMH-JRM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA DEPT. OF CORRECTIONS, | ) |
| Defendant. | ) |

Plaintiff filed this action in the Court of Common Pleas for Richland County. Defendant, the South Carolina Department of Corrections ("SCDC"), removed this action to this Court on April 15, 2010.[1] Plaintiff filed an amended complaint (supplementing the original complaint) on November 1, 2010. His remaining claims are those for injunctive relief under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq.[2] At the time of the alleged incidents, Plaintiff was an inmate at the Broad River Road Correctional Institution ("BRCI") of the SCDC. He is currently an inmate at the Lieber Correctional Institution ("LCI") of the SCDC. See Doc. 27 (Plaintiff's Notice of Change of Address).

On September 23, 2011, Defendant filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on September 26, 2011, pursuant to Roseboro v. Garrison, 528

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rules 73.02 (B)(2)(d) and (e) DSC. Because this a dispositive motion, this Report and Recommendation is entered for review by the court.

[2] Defendant filed a motion for summary judgment on December 2, 2010. In an order entered June 6, 2011, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, granted Defendant's motion for summary judgment as to Plaintiff's claims under 42 U.S.C. § 1983, dismissed Plaintiff's RLUIPA claims for monetary damages, and ordered that the case proceed only as to Plaintiff's RLUIPA claims for injunctive relief. See Doc. 31.

F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on November 1, 2011, and Defendant filed a reply on November 8, 2011.

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

**DISCUSSION**

Plaintiff practices the Nation of Islam ("NOI") religion. He alleges that SCDC policy violates RLUIPA because it fails to differentiate between the NOI religion and the Muslim (or Al-Islam) religion. Plaintiff claims that SCDC does not recognize NOI as a separate religion and that NOI inmates are not provided separate privileges including Friday services (known as Jumu'ah) and study groups. He also alleges that NOI DVDs and tapes were confiscated from the chapel at BRCI.[3] Plaintiff seeks injunctive relief, including an order requiring Defendant to allow separate NOI Jumu'ah services and study groups; that NOI volunteers be allowed to conduct classes; and the return of religious DVDs and tapes. In its motion for summary judgment, Defendant contends that it is entitled to summary judgment because: (1) SCDC is not a "person" amenable to suit under 42 U.S.C. § 1983 ("§ 1983) which forecloses Plaintiff's right of recovery for a violation of his statutory rights created by RLUIPA,[4] (2) Plaintiff fails to show a violation of his rights under RLUIPA or his entitlement to any injunctive relief; (3) as to certain claims, Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a); and (4) Plaintiff's claims for injunctive relief related specifically to BRCI are moot.

---

[3]Plaintiff also alleged that his personal property was searched by BRCI officers and certain property was confiscated in violation of his due process rights pursuant to § 1983. As noted above, summary judgment was previously granted as to Plaintiff's § 1983 claims.

[4]It is not necessary to address this novel question, as it is recommended that Defendant's motion for summary judgment be granted for the reasons discussed below.

3

1. Failure to Exhaust/Mootness

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his claims concerning the removal or confiscation of NOI DVDs and/or videos from the chapel at BRCI and his claim concerning his purchase of two books in July 2010. Ann Hallman ("Hallman"), the Branch Chief for the Inmate Grievance Branch for SCDC, states that Plaintiff filed no grievance concerning the alleged confiscation or removal of NOI DVDs and/or tapes from the chapel at BRCI. She states that Plaintiff submitted three grievances concerning the alleged confiscation of his personal legal and religious materials occurring on June 30, 2009, but none of those grievances raise any issue with regard to the NOI DVDs and/or tapes at issue. Additionally, Plaintiff's claims concerning the purchase of two books in July 2010 (asserted in Plaintiff's amended complaint)[5] occurred after the filing of this action. Hallman states that Plaintiff did not attempt to grieve this issue until after the amended complaint was filed (Grievance Number BRCI-1578-10 was filed on November 3, 2010). Hallman Aff., Paras. 3-5.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's ("PLRA"), 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr.

---

[5]The motion to amend was filed on September 3, 2010, and granted on November 1, 2010. See Docs. 6 and 12.

Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

Plaintiff has presented nothing to dispute the evidence submitted by Defendant showing that he failed to exhaust his administrative remedies as to his claims concerning the removal or confiscation of NOI DVDs and/or videos from the chapel at BRCI, and as to his claim concerning his purchase of two books in July 2010. Further, Plaintiff has presented nothing to show that he exhausted his administrative remedies as to those claims prior to filing this action. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. See 42 U.S.C. § 1997e(a); Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d at 677, see also Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled on other grounds by Porter v. Nussle, 534 U.S. at 532; Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999)(An inmate incarcerated in a state prison must first

comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

As noted above, Plaintiff was transferred from BRCI to TCI. Thus, any claims for injunctive relief specifically related to BRCI, including Plaintiff's claims concerning the removal or confiscation of NOI DVDs and/or videos from the chapel at BRCI, are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief.").

2. RLUIPA

The RLUIPA prohibits state programs that receive federal funding from imposing a substantial burden on the religious exercise of an inmate unless the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1. Here, Plaintiff alleges that SCDC's actions violated his rights under RLUIPA. Defendant contends that Plaintiff's RLUIPA claims fail because he has not shown a substantial burden on the exercise of his religion and, even if he has, its policies survive strict scrutiny analysis.

A. Substantial Burden

Plaintiff claims that SCDC policies impose a substantial burden on the exercise of his religion because he is not allowed to attend separate NOI Juma'ah services and attend study groups which are exclusively for NOI adherents. He claims that he is substantially burdened because he must attend generic Muslim Juma'ah services if he wishes to participate in required NOI Ramadan

fasts and feasts. Defendant argues that Plaintiff fails to show that SCDC policies impose a substantial burden on his religious exercise as an adherent of the NOI.

The Fourth Circuit has held that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Plaintiff fails to show that the SCDC policies impose a substantial burden on his religious exercise as an adherent of the NOI. He is able to participate in the essential practices of his religion and has not shown that study groups are critical to the exercise of his religion (such that he has not shown that the absence of study groups for the NOI violates a basic tenet of his religion). Omar Shaheed ("Shaheed"), the Senior Muslim Chaplain at SCDC, and John Carmichael, Jr. ("Carmichael"), the Deputy Director for Programs and Services for SCDC, attest that Plaintiff is permitted to participate in the essential practices of this NOI religion. These include daily prayers, the Jumu'ah service, the Ramadan fast, and the Eid feasts. Shaheed and Carmichael also state that NOI inmates within SCDC are allowed to exercise their religious beliefs individually, are allowed visits by NOI ministers for individual pastoral counseling or instructions, and are generally allowed to receive the "Final Call" (the principal publication of the NOI). Shaheed Aff., Para. 12; Carmichael Aff., Para. 8.

Defendant contends that Plaintiff fails to show a substantial burden as to a lack of separate NOI services because NOI is a sect of the Islamic faith and it is not necessary to have separate service or study groups. Carmichael states that "SCDC does not treat separate sects of the same core religions as separate religions entitling inmates of each sect to separate services and programing." Carmichael Aff., Para. 5. This same approach is used with both the Muslim and Christian faiths at

SCDC. Carmichael states: "SCDC does not treat Nation of Islam as a religion separate from the Islam faith, just as SCDC does not treat other Muslim sects separately." Id. Shaheed attests that there is a general unity of belief in Islam, although there do exist sectarian differences. Shaheed Aff., Para. 6. Shaheed states that attendance at Jumu'ah "is an essential practice and tenet of all Muslims, including practitioners of different sects including Nation of Islam Muslims." Id., Para. 4. He further states that "[i]t is not necessary for the Muslim inmates to have separate Jumu'ah services or study groups in order to properly exercise their religious beliefs." Id., Para. 6. Shaheed explains that the sermons and teachings at the common Jumu'ah prayer service and regular study groups is taken from the essential beliefs of Islam (not from subjects where there are disagreements) and that "the teachings and prayers in any Jumu'ah service attended by a Nation of Islam Muslim is consistent with and is not offensive to his or her beliefs" and that "[t]he services and programming that are provided meet the religious needs of the Muslim inmate population." Id.

Plaintiff disputes Defendant's position of unity between NOI and SCDC Muslims because the generic Muslim services are not based on the teachings of Elijah Muhammad as required by the NOI, but follow the teachings of "Muhammad of 1,400 years ago" and require the professing of beliefs not required by the NOI. Plaintiff's Opp. Mem. at 6. Courts, however, have found that the NOI is universally regarded as a sect of Al-Islam. See, e.g., Muhammad v. City of New York Dept. of Corrections,126 F.3d 119 (2d Cir. 1997)("The Nation of Islam is one of at least twenty sects of Islam....The Nation of Islam shares many beliefs and practices with other sects of Islam."); Shaheed-Muhammad v. Dipaolo, 138 F.Supp.2d 99 (D. Mass 2001)("Founded in 1930, the Nation of Islam is a Muslim sub-sect that shares many beliefs and practices of traditional Islam (including

8

Sunni Muslims, Shiites, Ah–Mahidiyas, Sufi and Alislam)...."); Rashad v. Maloney, No. 98-0162F, 2003 WL 1906778 (Mass. Super. Mar. 12, 2003)("The Nation of Islam is a branch of Islam").

Plaintiff, based on his own statements and inadmissible hearsay statements, appears to argue that NOI beliefs and teachings are not consistent with orthodox Islam, and thus separate services and study groups are required. He, however, has not shown that the study groups or Jumu'ah services offered by SCDC cause him to modify his behavior or to violate his beliefs. Other courts considering this question have concluded that corrections systems are not required to provide separate Jumu'ah services for NOI or other Muslim sects. In Muhammad v. City of New York Department of Corrs., 904 F.Supp. 161 (S.D.N.Y. 1995), the district court recognized the differences between NOI and orthodox Islam, but concluded that "generic Muslim services provide comfort and solace to NOI members without pressuring such members to commit acts forbidden by their religion or preventing them from engaging in conduct or having a religious experience mandated by their faith." Id. at 191. The district court found that the plaintiff had "not shown that he cannot accomplish the mandates of his faith through the means that the defendants do provide in his prison or that the absence of NOI congregate religious services has substantially burdened the exercise of his religious rights." Id.

In Davis v. Alameida, 2009 WL 890723 (C.D.Cal. 2009), the district court found no RLUIPA violation when an inmate's request for a separate NOI service was denied. The court concluded that the inmate "failed to show that his ability to pursue his NOI beliefs w[as] burdened by the failure to provide chapel time specific to the NOI followers." 2009 WL 890723 at *5. The denial of separate Jumu'ah service to NOI inmates in Jones v. Shabazz, No. H-06-119, 2007 WL 2873042 (S.D.Tex. Sept. 28, 2007) was not found to violate RLUIPA where generic services "structured for all Muslim inmates, not exclusively for any sub-group" were offered. Id. at *19.

The Sixth Circuit, in Johnson v. Baker, 67 F.3d 299 (6th Cir. 1995)[Table] found the Religious Freedom Restoration Act (analyzed similarly to RLUIPA under a strict scrutiny standard) was not violated by the denial of separate religious services for NOI inmates. It was determined by the Sixth Circuit that inmate Johnson had "no proscriptions placed on his beliefs or the practices of his religion, but is simply deprived of a special time and place to observe his beliefs *exclusively* with others who profess the same faith." Johnson v. Baker, 67 F.3d at *4 (emphasis in original).

In his opposition memorandum, Plaintiff argues that the general unity of belief in Islam is not always adhered to at the Jumu'ah services. Such a failure to follow SCDC's policy (assuming that such it true for purposes of summary judgment), however, does not show that SCDC's policy itself is violative of RLUIPA.[6]

    B.    <u>Strict Scrutiny</u>

Once a plaintiff produces prima facie evidence to support the claim that the challenged practice or law substantially burdens the plaintiff's exercise of religion, the government bears the burden of persuasion on whether the practice or law is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-2(b). Defendant argues that even if the denial of separate Jumu'ah services and separate study groups for NOI inmates substantially burdens Plaintiff's religious exercise, these restrictions meet the strict scrutiny standard. Plaintiff argues that Defendant has not shown that the policy is the least restrictive means.

Even if Plaintiff has shown that Defendant's religious policy substantially burdens his religious exercise, Defendant has met its burden to show that its policy is the least restrictive means

---

[6]RLUIPA does not call for federal courts to impose procedural requirements on prisons. See Fegens v. Norris, 537 F.3d 897, 907 (8th Cir. 2008).

of furthering a compelling government interest. As is discussed below, Defendant has shown that its policy furthers the compelling state interests of safety, security, staffing limitations, and space constraints. The United States Supreme Court and the Fourth Circuit have recognized that safety and security are compelling interests. See Cutter v. Wilkinson, 544 U.S. 709, 722-723 (2005). In Jones v. Shabazz, the district court found that staffing limitations and space constraints, as well as security concerns, were compelling government interests supporting the denial of separate services for NOI inmates. Jones v. Shabazz, 2007 WL 2873042 at *19.

Defendant contends that the provision of separate services and study groups is not feasible. Carmichael and Shaheed provide that SCDC cannot provide separate services and study groups for NOI inmates or inmates of other Muslim sects based on limited time, resources, and chaplains or other leaders available to hold the Juma'ah services and lead study groups; it is not feasible or economically possible for SCDC to employ a sufficient number of Muslim chaplains to preside at Jumu'ah services in all SCDC institutions; and volunteers from the community are not always available to conduct the Jumu'ah service as the Jumu'ah prayer must be conducted at the same time on Fridays for all Muslims, such that community Muslim inmans or ministers are typically involved with the Jumu'ah service at their own mosques and are not available to assist at SCDC facilities. Carmichael Aff., Para. 7; Shaheed Aff., Para. 5.

Defendant also contends that there is a lack of adequate space for multiple Jumu'ah services at each institution. Carmichael and Shaheed state that SCDC does not have the physical resources to conduct a separate service for each of the sects of the Muslim faith. Carmichael Aff., Para. 7; Shaheed Aff., Para. 5.

11

Defendant contends that it does not have sufficient security staff for conducting separate services. Shaheed states that "[i]f there are multiple services being conducted simultaneously, then that would require additional security staff and would require taking staff away from other essential duties. Shaheed Aff., Para. 5. Carmichael states that SCDC "lack[s] the security staff necessary to conduct a separate service for each of the sects of the Muslim faith." Carmichael Aff., Para. 7. Carmichael further states that the request for separate Jumu'ah services raises additional security and safety issues as separate services would make it "impossible for the chaplains to properly monitor the services to make certain that the gathering is used for religious purposes only and not for some improper or even criminal purposes." Carmichael Aff., Para. 7. Shaheed states:

> [I]f the Nation of Islam Muslims are allowed to conduct a separate Jumu'ah service, then other sects (such as the Sunni, Shia, Sufi, Lost-Found Nation of Islam, etc.) will also seek that privilege which as stated above, overly burdens the limited available resources and creates security issues. The Jumu'ah services are primarily led by inmate leaders. By increasing the number of services, the Muslim chaplains and institutional chaplains would not be able to properly monitor the religious exercises to make certain that policy is being complied with. That also creates potential security risks in that it would increase the risk that the services would be used to push a non-religious or political agenda or even for more detrimental purposes including criminal behavior (drugs, assaults, etc.).

See Shaheed Aff., Para. 5.

Defendant has met its burden of showing that its religious policy (which includes the use of a generic Muslim Jumu'ah service rather than separate services for the NOI followers, and the requirement that certain information be provided and approved prior to allowing a separate study group) is the least restrictive means of furthering its compelling governmental interests of safety and security interests, as well as staffing limitations and space constraints. The Supreme Court stated that courts should apply this standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order,

12

security and discipline, consistent with consideration of costs and limited resources." Id. at 723; see also Lovelace v. Lee, 472 F.3d at 192.

Plaintiff appears to argue that the policy is not the least restrictive means of furthering a compelling government interest because there are NOI volunteers available to teach classes, he is not advocating for separate services for all Islamic sects (such that the burden would not be so great), and there are NOI volunteers who can assist in monitoring inmates. He, however, has only provided his own opinion and inadmissible hearsay to support his position. Further, he has not shown that these alternatives are viable. Defendant has presented evidence that it has attempted to work with NOI representatives who requested to conduct a study group or program within SCDC institutions, but that NOI representatives have not furnished the written information needed to review and approve the proposed program. Geraldine Miro, the Former Deputy Director for Programs and Services (she retired in April 2011), states that she traveled to Greenville, South Carolina and Charlotte, North Carolina to meet with NOI representatives, but:

> The [NOI] representatives [] exhibited a continued refusal to meet [Defendant's] requests for the information that they intended to present to the inmates. That information was absolutely critical so that we could determine that those materials did not create or promote a security problem and were not inflammatory or disparaging towards any racial, ethnic, or religious groups.

Miro Aff., Para. 6.

Plaintiff also appears to argue that the current SCDC religious policy does not hold up to strict scrutiny analysis because a previous (2002) SCDC policy recognized the NOI and SCDC "dissolved" the NOI as a religion in its later policies. He also argues that the previous policy allowed separate NOI study groups, but the current one does not. There is no indication, however, that the NOI was ever recognized by the 2002 policy. Although the current version, as well as a prior version adopted

13

on July 1, 2007, deleted a section on "instruction classes,"[7] this did not dissolve the NOI or deny the recognition of the NOI as a sect of Islam. Defendant provides that there were no changes provided to the "study group" section in the 2007 version or current version, there were no changes made to the provisions for generic Jumu'ah services and study groups, and the adoption of the 2007 version did not alter SCDC's recognition or treatment of NOI vis-a-vis other Muslim sects. See Defendant's Reply at 4-5.

## CONCLUSION

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 46) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

April 24, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[7]The 2002 policy merely provided that:
There are separate sects that identify themselves as Muslim, which have different interpretations of some parts of the faith. These groups will be allowed only to schedule instruction classes according to the limitations of SCDC Policy/Procedure PS-10.05, "Inmate Religion."
The Nation of Islam and the Moorish Science Temple are two of the groups that will be allowed to schedule instruction classes, when a qualified instructor from the community is approved as a volunteer to teach the class.
SCDC Policy/Procedure Number PS-10.05, issued June 1, 2002, Handbook of Inmate Religious Practice, Al-Islam (Muslim)(Attachment to Plaintiff's Opp. Mem.).

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).